Actually this case 524-0387 McElhaney v. Dust It was actually our second on the docket But since counsel is here and they have agreed That they are going to go first today and we appreciate that I believe Mr. Beaman Yes sir Are you ready to proceed? I'm ready Go right ahead Well good morning everybody Good morning When I received the notice that today would be the oral argument of this case There was several paragraphs including that notice And one of them was that if at all possible To refrain from going over the facts again Because everyone here knows the facts Understood the facts and read the facts And so I should focus on the issue And there is a main issue in this case And I think that I'd like to explain it Using maybe 3 or 4 minutes of my allotted 15 For my practical experience and why I think The issue in this case deserves a new trial When you're a plaintiff At some point either in the beginning or later on Comes time to make a settlement demand in a case And to do that of course you have to bring your client in And you have a conversation to evaluate the case To make a settlement demand And I found invariably in my experience If the case is a strong case of damages A lot of damage, horrific damage But it's questionable liability The client comes in and all they want to talk about is the damage And conversely in this conversation If a client has strong liability but questionable damage They just want to talk about liability So at that point it's my job I believe To tell the client I can't evaluate just part of your case I have to evaluate your entire case To make a proper demand in the case And what I do is sometimes I get pushback From the client who, you know, I was really hurt Or this guy was drunk Or whatever they're focusing on most And so I usually tell the client Listen, I went to law school I passed the bar I worked as an assistant state's attorney And tried a lot of cases I worked in defense and tried a lot of criminal cases All the verdict And if that doesn't get them to say You know what, you have a lot of education You have a lot of experience I'm going to listen to what you say Then I tell them as a last resort Well, over my career I've had in excess of $50 million In jury verdicts Just jury verdicts, not settlements And at that point they're usually saying You know what, you know what you're talking about You're educated in this You've got training in this And I'm going to go with you on a settlement demand In other words, you're experienced And you have expertise And I have training and education Now occasionally, occasionally during this process There will be a family member or a friend Who has a lot of sway with the client And I'll call them for purposes of this argument I'll call them Uncle Tony And Uncle Tony interjects himself into this thing And talks to the client when I'm not there And tells them how dumb I am And how I'm doing everything wrong And so this necessitates another conference with the client In which I say, you know what Uncle Tony might be a nice guy He might be smart But Uncle Tony never went to law school He never passed the bar He never deselected a jury He never presented evidence He never made a final argument And when I say you have to look at the issues in the IPI Uncle Tony thinks I'm talking about the FBI Because he has no idea what the IPI is And in that conversation Almost always the client comes around And accepts my advice because of education and training Now, why do I mention this? It might be obvious, but perhaps not Mitch Cole is a very studious, very genteel Very effective lawyer And Judge Ritchie is likewise Very effective, we both enjoyed it very much And I think this was his first civil case Because he's a small county lawyer Mostly doing divorce and drugs But neither Judge Ritchie or Mr. Cole Ever went to medical school They never passed medical school boards They never did an internship They never did a residency They're not board certified in any medical specialty whatsoever They never palpated a 1.5 centimeter lesion On a young man who was a childhood cancer survivor They've never done a mammogram They've never done a sonogram Never done an x-ray In short, they don't have any experience And like Uncle Tommy, somewhat They're in a field that they don't fully understand or are versed in So this is important, because in this case What happened was The opinion of the board certified oncologist Dr. Scherer Prior to trial, before any of the incidents happened later His testimony was ruled as speculative Even though he testified Based upon evidence that was in the medical record About the growth of this cancer And the time, the year That this cancer festered Was allowed to fester before it was finally even treated He said based upon that evidence in the record And the reasonable degree of medical certainty I believe the cancer would have been a stage 1 in 2014 And therefore would not have required radiation therapy And did he define stage 1? Yes, stage 1 was, he defined it as Cancer that's under 2 centimeters And has no lymph node involvement And that was his definition Based upon his education, experience, and training That is correct What's wrong with that question and answer? There's nothing wrong with that question and answer And is that the question and answer that was deemed speculative? Yes, there was a motion filed to The motion, the title of the motion was to You're talking about motion number 45? 45, saying that it was speculative Right, what you haven't done in your brief Is you haven't given us all of the information necessary To hone in on what was and what was not allowed So it's difficult from the brief Figuring out everything that the judge Denied testimony of Unless we go to 45 Well, 45 contains most of it Because what he testified to was Based upon the only 1 out of 9 lymph nodes Being positive after a year of growth The growth originally being a hard Mass under the chest Measured at 1.5 centimeters by the doctor And then over the course of the year Finally, the hard mass had fingers That went out and actually caused a nipple to twist He said based upon that And the only 1 positive lymph node Found in 2015, a year later He said it was more likely than not Based upon a reasonable degree of medical certainty At stage 1 in 2014 And it's not only the expert witness That testified to that prior trial But the treating physician Who was not the retained expert She was an oncologist And she was a breast surgeon oncologist In addition to that Dr. Theresa Schwartz She was trained at the University of Michigan And it's time she was in St. Louis And she testified the same thing That based upon the size of the tumor And she knew the size of the tumor Because of the biopsy It turned out to be 1.2 centimeters This hard region that was removed from the biopsy Pretty close to 1.5 It was measured by Dr. Dust by the way Very close is physical measurement It's this hard tumor But later when she did the mastectomy on him She found that it was The pathologist found, excuse me That it was 2.3 centimeters So it almost doubled in size Between the initial measurement by Dr. Dust It didn't have any extension No lymphomersion It hadn't grown Until that Now the significance of this is that In the IPI jury instructions The jury that got The court was then That I have to prove the doctor was negligent And in addition to proving negligence I have to prove also That his negligence Injured the defendant Because the testimony of I don't think that's the standard I think the standard is caused or contributed Caused or contributed I think that's basically the same thing But yes, that his negligence caused or contributed I couldn't prove that And I couldn't prove that because the only real damage That was suffered Was the radiation damage We couldn't have limited use of his arm After the radiation But I couldn't prove that Because I could not prove That he would not have had radiation Had it been discovered in 2014 as stage one So that left the jury with no choice Now as far as the standard of care There was, I don't know, seven or eight textbooks That not only my experts said were authoritative But the defensive standard of care witness doctor Dr. Weber He also said they were authoritative And every single one of those textbooks said That if you have a hard region In the chest And it's unilateral Which this was You have to remove it They all said that, all these textbooks It was uncompromising I thought that your opponent objected To you having textbooks on your desk I did I thought it was a good visual Because it was stacked up really high Because there was a lot of textbooks And they all said the same thing You've got to remove it if you see this one And these textbooks are talking about people That were not cancer survivors This is just the normal population This kid had full body radiation He had everything he could possibly think of Before this I just It couldn't have been decided If the manifest way In fact, all of the way to the evidence Would have been that this was negligence Not to have him at least tested With a sonogram and mammogram Much less just have it removed So it comes down to damage And I couldn't prove damage because my Expert and my treating physician's models Had been duct taped Well, is the standard of review For a new trial manifest way to the evidence? No, no it is not It is not I wish it was, but it's not It's that no reasonable person Would have excluded the evidence, basically That's the ruling on the motion in Lemony Is abuse of discretion Abuse of discretion, yes So in your trial under This district's case Of Grand Dairy vs. Carbondale Clinic The question is whether or not The plaintiff was prejudiced Yes, and you have to prove you were damaged And I think we proved you were damaged Because we could not show The element in the jury instructions That his damage is caused or contributed To an injury to the plaintiff And we couldn't do that because His testimony was stricken On the basis of speculation So do you believe that your case was prejudiced Because of that striking of the testimony? Yes Okay, and that's the basis for you asking for a new trial? Yes Okay Well, I'm a bit rich, I guess I have limited experience in medical malpractice But as far as rules of evidence It seems like there was a reliance on Dillon and Snelson And those were adopted in 2002 The Illinois Rule of Evidence 103 Was adopted in 2010 And the question comes down to offer of proof There was no offer of proof made By the plaintiff in this case It seemed to rely on Dillon and Snelson One was not necessary, but People vs. Gurdier Gurdier is 20-24-11-2-2-3-0-2-6-0 Interpreted for 103 And it indicates an offer of proof Should be made I'm not sure why no offer of proof was made And what the impact is on that Well, first of all, the offer of proof Only applied to Dr. Scheer The Dr. Schwartz Whose testimony also said the same thing Was an evidence deposition And it was So really The offer of proof was not Relevant to Dr. Schwartz As far as the offer of proof With respect to Dr. Scheer There is also A law that's put out in my brief That if the issue is obvious And this was a brief Acknowledgment There was a motion, an answer, a motion to reconsider Then it was asked to put extra evidence in Which I did In the form of deposition testimony There was no question Everybody knew what he was going to say And there was case law in my brief That indicates that in those situations You don't need an offer of proof And so after going back And reading those cases, I decided You know, I just Was his testimony also in the motion in Lemonade? Yes So it was already in the record It was already in the record, yes And that's why I got to thinking about Why should I cause the court and everybody more trouble Because this is already something Everyone knows It's obvious what's being talked about And there's case law That says under those circumstances you don't need an offer So that's basically I think my time is up Go ahead and put your final comment To close In closing This poor kid Was denied a fair trial A fair trial would have allowed His doctors To testify to that Now if their doctors Had a different opinion They could have testified to it But they had a problem with that Because their oncology expert Dr. Hoffman Had previously testified in another case That you can Judge the stage of breast cancer Previously In an existing case What it was likely Based on a reasonable agreement I didn't understand Why you Attempted to admit that As far as relevance went Did Dr. Hoffman Testify in this case That You couldn't make the Link between Delay and cancer And you were going to Cross-examine him on that Or did you just want to say That he's done it before You're saying it's speculation And what I brought up Is to show their own expert Says it's not Speculation But it wasn't in this case It wasn't It was another deposition In a case in Florida But I could not bring it up in this case Because it was not relevant It wasn't an issue in the case Because my doctors weren't allowed To testify to it So I wouldn't Make that mistake Couldn't you have cross-examined their expert on it? I don't think so But even if I did What is the point? So he says well maybe you can I still don't have any evidence that it was stage one So it would have been useless I want to If it's okay I want to ask you About the sanction issue Where you inadvertently Sent some records To your expert In the transcript It seemed that when You discovered That this had happened Dr. Scheer was on the stand Am I correct? Correct me if I'm wrong But you excused him Or the court Excused him before anybody And you asked him If his testimony would have been Different I could not find in the record Where this witness was asked Well would your testimony Have been different I saw where it was argued But I didn't see where the witness Actually testified Did he ever come back on the stand And say well my testimony would have been different? And I'll ask your opposing counsel I'm just asking for your recollection I'm not I'm not certain enough to do it I will tell you I was very embarrassed By that sanction When did it happen? Well it happened I was tired and I thought it was inadvertent But then when I read the email It said I sent the evidence deposition So I think I was just tired And didn't think it through I don't understand Why was that stipulation even made? Why can't A witness review an evidence Deposition? I think That's an interesting question When you make a motion to exclude witnesses It doesn't mean they can't talk about the testimony afterwards So Unless you say that they can't You can't tell them about the testimony I found that out in a case a long time ago But I agree I'm not sure Why but In the course of the thing I already had another expert That was going to testify It would have been stage one So I wasn't that concerned about it I was concerned But his testimony Had been excluded Long before the trial even started So really that sanctions Order really didn't affect anything Right But it seems to me That the sanction Could have been limited to Not allowing your Expert to testify beyond What he had testified to In his discovery deposition I think that could have happened It didn't And I'm not criticizing I won't let everyone here know I have a very high regard for I disagree with him on this issue But he is a terrific judge And did a good job I can't answer your question I don't know But I think it could have It could have been done that way Well how would you The motion in limine had already been granted How would it have changed His testimony if the sanction Would have been tailored differently Well He wouldn't have been allowed to talk About it being stage one Right But assuming the motion in limine Stayed in place Couldn't the sanction Have been limited to Okay doctor you can only testify To what you testified to in your discovery deposition Yes Okay I think it could have It wasn't but it could have But thank you I'm sorry I went beyond my time Just hold on one second This is Vaughn you had your question Well again with the sanction issue Again there was no offer of proof There was no Basically no argument of trial It almost seems like that issue is forfeited Is it not Well I don't think so because As I stated in my brief Offer of proof is not necessary If it's obvious what the issue is And what the testimony would have been Here it could have been more obvious It was motion answered Re-answered More answering And then another hearing How could anyone say Well I didn't know that the testimony Was going to be of a stage one Instead of stage two I mean you'd have to not be there To think that So in those circumstances An offer of proof isn't necessary Where it's obvious what the question And answers would be Which it was obvious Thank you All right thank you I'll let you go ahead of your time Thank you sir Mr. Cole Good morning My name is Brett Cole I'm counsel for Glenn Dust M.D. The defendant in this case And I'm here today To ask the court to affirm The trial court's judgment On the jury's general verdict In favor of my client in this case The trial court's rulings On the evidence were sound But even if there were Decisions made that were different From what this court may have decided The plaintiff has not shown How any such error Impacted the jury's verdict The trial court Properly excluded The speculative causation evidence From plaintiff's witnesses And my brief Did include the word speculation With great frequency Because that's the key issue here That was the trial court's Basis for excluding testimony It was a proper exercise Of the trial court's discretion Asserting no negativity In the presence of Every question asked of witnesses Asked to offer causation opinions Did not make the mask No negative Just like saying speculation Again and again doesn't necessarily make Testimony speculative Mr. Cole, before we get into all of the speculation Which you have Used Many, many times I want to talk to you about Your new trial Argument I refer to this In The other argument And it's a Fifth District case Called Granberry v. Carbonell Clinic It's in your briefs And in that case Where the testimony Was not allowed This court has said That where the error Is so prejudicial That it affects the essence Of the plaintiff's case That a new trial Is warranted You seem to argue that Every element of Every aspect of the case Has to be Somewhere In error And that's just not what the Fifth District says What is your response to that? I understand that position I believe that In cases where A new trial has been ordered Many of which are Cited in plaintiff's brief The trial has been on Damages alone When liability has been admitted That's not Granberry That's correct And The facts in Granberry Are distinguishable From this case And that Distinguishment has been Elaborated on in the briefs How are they distinguishable? This case Involved Granberry involved a hypothetical Yes And that hypothetical question in Granberry Was based in known facts In this case The hypothetical question Is based in an unknown fact Of whether there was No negative mass or No positive mass That was your hypothetical That was Mr. Beeman's hypothetical In his questions to each of these witnesses On the question of staging He said if you have In 2014 A no negative mass of less than Two centimeters Is it What stage is the cancer? And each of these witnesses That's not his hypothetical His hypothetical was If you have stage one Which is less than Two centimeters and no negative What would the treatment Have been? Do you agree with me? Yes He's defined Stage one cancer Yes But all the experts say Stage one is no negative And Less than two centimeters Yes So what is wrong with a hypothetical That defines the essence Of the disease? In other words Stage one is less than two centimeters And no negative What would the treatment have been? What's wrong with that hypothetical? It's the assumption of no negativity There is no no effect It's a definition, isn't it? It is, but as it applies To the facts in this case It requires an assumption If you're to say This was a stage one cancer in 2014 You have to assume That it was no negative in 2014 And there is simply No evidence that it was no negative In 2014 But a hypothetical states facts That are Can be definitional As I've just explained Certainly If you want If they say it's more likely than not To a reasonable degree of medical certainty That it was stage one Then somebody has to define stage one Right? Yes If I asked you, for example, to Define negligence Could you do that? Absolutely The existence of a duty And a breach of a duty What's the difference in the question Between asking If you have stage one That is two centimeters And no node involvement Is it more likely than not? You can define negligence By saying duty and breach At some point you have to define The topic Absolutely But you also have to apply the components Of that definition to the facts of the case And the facts of this case do not Meet the components of that definition How do you know that? Because there is no evidence That this mask is no negative It can't be no What is the significance of no negative? No negativity If it was no positive in 2014 Then it was not stage one And treatment modality would not have changed From 2014 The opinion is it was stage one No, I'm sorry, it's not The opinion is that if it was no negative Then it was stage one And the reason Okay, can we have a record Where it says that Because that's not the question That was asked In Dr. Schwartz's Deposition Evidence deposition Her testimony In response to The question about staging Her testimony Is based entirely On whether the mask Was no negative And less than two centimeters If you can show me in the record Where it was based on the Node involvement As opposed to the stage involvement Do you understand my question? I do Okay Provide me a minute, please Yes, take your time Okay Okay I try to pinpoint Dr. Schwartz's Deposition In the record I apologize For the delay Oh, that's fine I see      I need the help I believe it came in the form of a supplemental record No, it did not I apologize to my colleagues It is fine, all right Okay, Dr. Schwartz's evidence deposition begins on page 574 of the Common Law Record C-574 Now we'll see if I can find her testimony in this Now you're looking at Dr. Schwartz, not Dr. Shear Okay, thank you   I'm just When you said that I thought we were talking about Dr. Schwartz offering I'm talking about any doctor who's going to say that the lymph node is the key Okay, well As opposed to the definition of stage one Dr. Schwartz would be the witness That's the witness She was, yes Okay And so we're looking at Dr. Schwartz's testimony Yes, you're on the line Okay The pages are noted in my brief, Your Honor I apologize, they don't have them front and center Let me ask you a question Since it's difficult for you to find it When you filed a response to the post-trial motion I'm looking at C-903 Yes Yes, there is where it's at Okay In that question in C-903 which was Dr. Schwartz The question is Had you performed your surgery in May or June of 2014 instead of June 2015 and there were negative margins and no lymph node involvement or vascular invasion Do you have an opinion more likely than not as to what stage would Michael McHaney's cancer have been Answer, sure Without seeing him in 2014 just based on the records if the mass was 1.5 centimeters and there wasn't anything in those lymph nodes it would have put him at stage 1 Question Had you performed your surgery in May or June of 2014 and the cancer then was at stage 1 with negative margins and no lymph node involvement or vascular invasion Do you have an opinion more likely than not whether radiation therapy would have been needed at all Witness, if he had a small tumor with negative margins and no lymph node involvement then it would be unlikely that radiation therapy would be considered Why is that an improper hypothetical Because it assumes that in 2014 there was no lymph node involvement and no witness in this case had offered the opinion to a reasonable degree of medical certainty that there was no lymph node involvement in 2014 But the hypothetical in and of itself by definition because she believes it's stage 1 in order to define stage 1 has to assume there's no lymph node involvement Isn't it a question of facts then for you to examine cross examine before the jury as to whether or not there was lymph node involvement Asking that question and allowing that answer invites the jury to speculate well maybe it was Maybe it was If the definition is less than 2 cm no lymph node involvement if it's stage 1 they have to assume those definitions just like negligence is breach of duty and damages That's  I think a fair assertion However In this case lymph node involvement was never a question of fact. There was never an assertion sufficient to pass muster to clear that bar of admissibility that there was evidence of no lymph node involvement in 2014 No witness had Thank you for understanding my question The definition of stage 1 is no lymph node involvement Yes Do you want to fight over what the definition of stage 1 is? No Well then you have to assume it has no lymph node involvement But you can't assert stage 1 in this case without assuming lymph node involvement and you can't assume no lymph node involvement without speculating as to the circumstances of this patient in 2014 The witness was the treater who has much experience who says it's more likely than not stage 1 That's what you want to disagree with isn't it? She bases that assertion on the idea that the lymph node doesn't involve Where does she say that? That's what I'm trying to get you to show me Where does she say that? It's in the question and in her answer It's in her definition for stage 1 He basically reads to her the definition of stage 1 disease and says if I told you that this patient had these conditions that are stage 1 disease would you agree with me that he was stage 1? And that's not what's at issue What's at issue is did he have those components and nobody can say he did Don't you have to say hypothetically if I ask you about the definition of negligence you have to have breach and duty Are you saying that you can't ask that question? Because the definition includes breach and duty It does, but you would also have to get into some facts and if you were to ask me in my professional opinion that I believe someone was negligent I would have to know what the duty was if it existed and if it was breached And here we have 8 less than 2 centimeters and she assumes no lymph node involvement Why? Because Dr. Scheer says it was only .4 at the time of the surgery So you have 2 witnesses who are talking about the definition of stage 1 and why it's more probable than not that it was stage 2 and stage 1 in 2014 I'm lost on where you want to excise one part of the definition That's what's confusing me Neither of those witnesses could tell us that there was no lymph node involvement It's the definition Because they couldn't tell us that they couldn't tell us it was stage 1 without speculating that there was no lymph node involvement Can you show me one case that supports your position on speculation as opposed to a proper hypothetical Weenbeck versus Searle I believe supports that case What case? Weenbeck versus Searle I believe that's an ophthalmology case an emergency department case A physician said I don't know what this guy looked like 7 days ago That's different I don't really see a lot of difference because none of these witnesses have said I know exactly what this cancer looked like Nobody could go back to 2014 in any case We could never do that without talking about probabilities There are plenty of cases though where you can look at the evolution of a cancer and you can say These benchmarks are here This time has passed and this case is not one of those Can you tell me about one case that you said there are many cases Give me one of those cancer cases Generally speaking cases where you have many nodes many lymph nodes that have come up to be infected later on I looked at the cases in your brief and I don't see any that support your position I don't believe I cited any delaying cancer diagnosis cases in my case I will say that in this case there was extra caps for invasion of the lymph node and that's noted in the record That means that the cancer had gone all the way through the first node and was potentially making its way They didn't find cancer in other nodes but they found it not just a little bit of cancer in that lymph node In 2015 they found it had taken over the lymph node in 2015 And Dr. Shear wanted to talk about that He suggests that it advances disease but he can't say that it wasn't in that node in 2014 But he did say that it was more likely than not that it was stage 1 in 2014 By definition, stage 1 is no lymph node involvement in less than 2 centimeters Yes, that's true But you argued for example that it was more than 2 centimeters because part of it was under the skin Then it's a question of fact, isn't it? I suppose it could be But you didn't argue that Before you get to questions of fact you have to deal with whether the evidence is admissible at all Are you saying that a doctor who's a treater like Dr. Schwartz can't give an opinion to a reasonable degree of medical certainty as to what it's more likely than not? I'm saying that if she can't do that without speculating it should not be admissible Everything to you is speculating that No What can she do? She can talk about her opinions based on the known facts And part of the known facts would be known negativity or positivity Okay, what were the known facts in your opinion in 2014? The known facts in 2014 were that you had a top of the last in the chest that on palpation measured at 1.5 centimeters Was it round? Was it hard? Round and hard or firm The definition of both terms was an issue in the trial Then a year later you have a mass that's also palpated at the same size but with some changes noted three weeks prior to the second palpation And because of those changes the patient was sent for biopsy and then the mass was found to have been between 1.5 and 2 centimeters It's actually not a biopsy A biopsy and excision So it's actually not There's an issue among the parties as to whether the mass is greater than 2 centimeters at all So a question of fact arose Certainly, and that question of fact was before the jury And that question of fact was Was the question of fact whether it was stage 1 or stage 2? That was referred from oncology opinions from Dr. Hoffman and Dr. Scheer as to the staging of the disease What did they say the stage was when it was discovered? Dr. Scheer said stage 2. Dr. Hoffman said stage 1 So Dr. Hoffman said it would have been stage 1 in 2014? Yes He based that on The fact that it was stage 1 in 2015 So it didn't it didn't grow He didn't say it didn't grow but he said it was stage 1 in 2015 so it couldn't have been a different stage How does he know that? He looked at the pathology report He doesn't know in 2014 How is his opinion any different than Dr. Schwartz? Well, it could not have gone It didn't shrink I understand How is his opinion any different than Dr. Schwartz's opinion? The basis of his opinion for 2014 is I know there was a mask there because Dr. Dust felt it on his hand In 2015, the mask was excised for biopsy and then excised by the remaining portion and those two portions put together made a mask that was just under 2 centimeters He staged the mask at stage 1 I'm sorry, how did he define stage 1? He defined stage 1 as a mask 2 centimeters or less with no node involvement I'm misrepresenting Yes, he said there was no development in 2015 and no one can know if there was no development in 2014 So now we have the question of facts Your expert says no one can know and plaintiff's expert by definition says if it's stage 1 here's the definition Nobody said plaintiff didn't have lymph node involvement Did they? Because you wouldn't let them It wasn't my decision The witnesses for the plaintiff who plaintiff asserted says there was no node involvement in 2014 They did that by definition and that's why I wanted to read the questions to you because I couldn't find in the record where they relied on that to make their opinion They relied on the definition of stage 1, I agree with that But I couldn't find where your argument was that they relied on the node involvement to say it was stage 1 Well, each of those witnesses said a stage 1 tumor has no node involvement That's the definition Yes, and so Mr. Beeman went to each of those witnesses and said if you should happen to have a mass with no node involvement and less than 2 centimeters wouldn't that be a stage 1 mass? What's wrong with that hypothetical? Nothing at all is wrong with that hypothetical but when you say if you had a mass with this patient in 2014 with no node involvement and a mass of 2 centimeters or less, then that hypothetical becomes a product because that hypothetical is inviting the jury to go, oh, maybe there was no node involvement in 2014 That's been my question to you is what is the significance of that except in staging? Well, staging is the whole enchilada here, that's causation, that's what drives the treatment. And you were able to keep that out Mr. Beeman was not able to get it yet He couldn't get it in without speculating as to the condition of the node in 2014 Just a follow-up? Maybe just a brief question on some of the medical issues with evidence-backed issues There are no specific findings required of the jury in this verdict form, is that correct? That's correct. Was it a general verdict? General verdict, no special interrogatory. Does that play a part in our decision-making in this case? I believe it does substantially. How is that? Because the jury very well, there was evidence of causation in this case. The jury very well could have believed that the conduct in this case did cause delay in treatment and that delay in treatment did cause injury. But they could have also believed that conduct was compliant with the standard of care. There was no standard of care evidence offered from the defense that said, when you are presented with a mask of this nature and quality, it is appropriate to observe the mask before engaging in excision and biopsy and things of that nature and wait until that mask does something that you're concerned about. And that's what Dr. Best did There was about a three week lapse in time between when the plaintiff noticed his nipple had inverted and he reported to Dr. Best. And then he was immediately referred to oncology to work out that mask. The defense presented evidence from Dr. Best that that's compliant with the standard of care for a family practice physician and we presented an expert witness who said, that's compliant with the standard of care for a family practice physician. It's entirely possible the jury could have said you know, he really did what he was supposed to do and unfortunately that caused my reading error. So thank you. I have one. I know I've I apologize to my colleagues. I want to answer Dr. Banks on the issue. And I ask Mr. Beeman this question. In reading the record, you made objections to Dr. Shearer's testimony going forward that he was properly sanctioned because of some inadvertent records that got to him, deposition, whatever. When I read the record you all excused the doctor before anybody asked him if these documents would have made a difference in his testimony. And I'm wondering if your recollection is different or if there's maybe I've missed something in the record. I saw that you argued his testimony would be different. But I didn't see that anybody asked him the question. I do not recall that the witness was more geared on whether those evidence depositions affected his opinion. I will say that in one of his five discovery depositions, Dr. Shearer indicated that the basis for his opinion regarding radiation and its use as a treatment modality came strictly from the deposition testimony of Dr. Cho. And then subsequent to that, Dr. Cho, whose evidence deposition was slightly different in some ways than his discovery deposition. Dr. Cho's evidence deposition testimony was provided to Dr. Shearer. And... But we don't know if it would have been different. He was not asked that question to answer your question. I know that Mr. Beeman did not send those evidence depositions to Dr. Shearer inadvertently. And he has indicated as much on the record. He has indicated as much on the record today. And the reason I say that, I don't say that to suggest that he has engaged in any kind of nefarious behavior. I believe that he sent those evidence deposition transfers to Dr. Shearer with the intention that Dr. Shearer read them. And the input from that is he sent those to Dr. Shearer with the intention that they would affect Dr. Shearer's opinions. Well, I don't understand why a court could not fashion a sanction that says you can't testify beyond your discovery deposition in light of the agreements you all made. The sanction that was offered by the court was imposed in trial by Mr. Beeman and adopted by me. So there wasn't any great debate at trial over what to do about Dr. Shearer's causation testimony. Mr. Beeman suggested, well, he won't talk about causation anyway. Well, because Motion to Eliminate 45 had already been granted? It had been granted, but it was not entirely dispositive of Dr. Shearer's causation opinions. Dr. Shearer had causation opinions that were outside of the bounds of Motion to Eliminate 45, and there were motions to eliminate concerning Dr. Shearer's causation opinions that I made that were denied. So this was not Dr. Shearer's going to take the witness stand and be mute on the issue of causation entirely because of this Motion to Eliminate. He was restricted from speculating as to note involvement, but he was not. Well, anything related to a lymph node testimony was precluded. That's correct. So, I don't, it seems to me that's a lot of testimony. The known fact of the case was that the note was known to be involved as of June 15, 2015, I believe it was the court's termination. And the court would have no testimony from either side as to note involvement prior to that date. And that was within the court's discretion. I'm just curious as a general practice since I get to read the record, why did you object to Rule 45 video coming in, his expert coming in by video? Isn't that what we had Rule 45 for? Well, the way that his testimony played out in the trial court is exactly a reason for that. He was under the jurisdiction of the judge sitting next to him five feet away. And he started to talk about hearing reading evidence that he was not supposed to have read based on our stipulation. How would that have changed if he came in by video? If he came in by video, the jury was excused. That's true. It would There's an important  about being in a room with someone and hearing them and seeing them eye to eye that the reason that it was known is because Dr. Scheer in Paxson made some remarks about having seen depositions three weeks ago. I, as I'm standing here, do not believe that if he had appeared by video that I would have caught that. And that was a dramatic turn in the case. It was important for him to be in the courtroom. Why was that a dramatic turn? His testimony had already been precluded. Not all of his causation testimony had been precluded. Just his testimony regarding the one study. He had other causation testimony to offer and Mr. Bienen opted not to present that to the court. Okay. Thank you very much. Thank you, Collin. I just wanted to question about the offer of proof. Is Illinois Rule 11-103 not requiring an offer of proof? Is Dillon still a good law that you're opposing counsel's testimony? The answer is obvious. We don't have to make an offer of proof because it's obvious what the offer of proof would have been. But am I on a tangent here on going back to 103? I believe Rule 103 controls. I believe that an offer of proof is required. I believe that a trial judge is entitled to assess certainly on motions in limine which the rules have long stood that those are interlocutory rulings. The trial judge is entitled to have all the information before him or her to reconsider an interlocutory order. So it's obvious what the offer of proof would have been because some of the subject is in the deposition. So why do we have to go through that exercise of sorting out the record? Well, the depositions were taken on questions by me and my partner, Mr. Hughes. They were not taken on questions by Mr. Beeman. So how that evidence would come in might be different.  Mr. Beeman was given the opportunity to have a Zoom call with this witness on a later day in the course of trial before the jury came into the courtroom. And he was given the opportunity to put on all the evidence that he believes that witness would have presented, motion eliminating 45 or otherwise, all the causation evidence. And he offered not to do it. And the court could have heard that and said, you know what, this isn't this isn't within, this isn't speculation. The court could have made that determination. I don't believe that would have happened, but the court could have made that determination and was deprived of the opportunity to do so. Thank you. Anything else? I didn't hear what rule. 103.   That's nothing further. Thank you. Thank you very much. Mr. Beeman? Thank you. Just a few things. The first thing is this is a pretty great courtroom. The only one still standing from Lincoln. So this is a special moment for me. I made a challenge, which was voted by one of you, to Mr. Cole, come up with one case since 1818 where a doctor who bases his opinion on some evidence in the record based on a reasonable medical uncertainty had an opinion that was deemed speculation. And first in his response to my post-trial motion, he mentioned some unreported cases that basically support my opinion. And today he mentioned Mead v. Searle, 385 ill at third, 289. In that case, the patient's expert admitted in court that it was pure speculation on his part whether a CT taken earlier would have warranted any intervention sooner than what was done, or even whether any such surgery would have even taken place. So if that's the best case you come up with, where the expert said, yes, speculation, I can speculate on this, that I don't think helps him. So I don't think we have a medical researcher ever, and I can miss a case, but it takes some confidence to tell your court, hey, come to a case that says this. He couldn't do it. I can't do it either. So that case. Now, there was some talk about the no negative is definitional, and I agree with that. But I think there's more than that because if you look at Dr. Schwartz's evidence deposition at C615 and C616 in the record, and I was going to interrupt and help Mr. Kowalk, but I thought it was inappropriate to do it, but that's what it is. The question was, and this is very important, it goes beyond, that definition was so important that it goes beyond that. Question. Have you performed your surgery in May or June of 2014 instead of June of 2015? Do you have an opinion, more likely than not, as to what stage Michael McElhaney's cancer would have been? Answer. Again, if the mass, without knowing him in 2014, if the mass was 1.5 centimeters in size, if the margins were negative, and there was nothing in the lymph nodes, then he would have been at stage 1A. Question. Do you think that was more likely than not the case in 2014? Answer. Based on the information I've been told about the size of the mass at the time, yes. And who is that? Dr. Schwartz. Or are you reading from that? The record is C615 and C616. So Dr. Schwartz said, yes, that would have been the case. More likely than not. And then I asked, does that cover my bases? Now, as Michael McElhaney is treating breast surgeons, are you of the opinion that you have testified to more likely than not based upon a recent review of medical surgery? And she said, yes. So she said, yes, her opinion is more likely than not that would have been the case, it would have been stage 1 in 2014. So it's definitional, but it's also testimonial. Directly. Mr. Gaiman, I'm not sure what relief you want this court to grant you. Are you saying that the court erred in granting defendants motion to eliminate 45? I'm asking for a trial. I understand you want a new trial, but if you want a new trial, what's the basis for the new trial? Is it the granting of the motion eliminating 43 through 45? Is it the questions that you've limited yourself to in the brief? Although I don't know that you've limited yourself because you also talk about motion to eliminate 45. So besides understanding you want a new trial, what guidelines is this court are you asking this court to follow in granting you a new trial? What kind of relief in that regard? Well, I think it was denied a fair trial. I understand, but how do we get... Assuming the court would go with you on that, what would you see the opinion would look like? Well, I would see the opinion that the courts and Dr. Sheer would be allowed to testify as to... Dr. Sheer would not only be allowed to testify to standard of care, but also be able to testify as to what the likely stage was in 2014 of the cancer. Because that's...  Staging, yes. That's the most important part of the case. Another thing we've said is well, there was some Dr. Weber, that was the standard of care of this doctor who I wonder if he has never testified in his life or a plaintiff, but he does a lot of testifying. He said you can observe it for a while. Yeah, you can. For a week or two, you can observe a hard mass in the chest for a week or two. Not a year. I mean, you can ask any nurse practitioner, you can ask a layperson, and they say that's crazy. As far as the testimony of Dr. Sheer and what he could have testified to after that motion of liberty, I can't think of a single causation issue that I could have asked that was germane to the case that I could have asked after that motion was granted. They said he couldn't testify to staging, couldn't testify it was one, couldn't testify radiation would have been needed. What is there for me to ask him? I can't think of anything that I could ask him. Well, the motion eliminating 45, give me just one minute, there were also two other motions, 43 and 44, what do you have? Do you know those off the top of your head? No, I don't know.  Sorry. Because the way the motion eliminate is crafted, it's called motion eliminate regarding speculation. Correct. That's 42, 43, 44, 44, and 42 dealt with the liver function. That was not an issue in the case. And the fatty. Fatty liver, I dropped all that. Okay. It was apparent to me. That's why I asked you if we're talking about motion eliminating 43, 44 and 45, because 43 says Dr. Scheer offered several opinions on his belief regarding the size and character of the mass in 2014. And it goes on. But that's the testimony you would want in. Correct. The liver, I thought it was getting too unwieldy, too complicated, and I wanted to keep it simple. So, what you're really asking for is motion eliminating 43, 44, and 45, the testimony related to causation and size and staging. Correct. That's where you believe the error is. I think that's where the error is. And I think Mr. Kohl talked about Dr. Hoffman and Dr. Scheer. I think he's confusing. Dr. Scheer said it was Stage 1, not Stage 2, in 2014.  I have a question about the closing counsel with regard to the verdict forms. Steen v. Ray in orthopedics and sports medicine are out in the Supreme Court in 2021, and said a general verdict should not be set aside for a new trial unless the finding on every element of the claim was against the manifest way of the evidence. But in this case, there were no special interrogatories submitted to the jury. They returned a general verdict. So, what impact does that have on our decision-making in this case? Well, as far as, there's two elements called issue of evidence. As far as causation, it is against the manifest way of the evidence for a jury to come back and say there was no negligence in this case. I would think that all three of you would agree with this. Certainly, if you had a family member that had a previous cancer survivor and showed up with a 1.5-millimeter heart ratio, the three of you would know that something has to be done to test that. You wouldn't wait a year for it to grow and have the nipple all sideways. So, the manifest way of the evidence could not have been reasonably decided based on negligence. It had to be causation, and we couldn't... But that's just your case of being a damage to the curve where the Stage 1 or Stage 2 treatment was administered. So, that's a whole different thing than what you're saying now, as far as I understand it. No, I'm saying that there's no question about the negligence. The manifest way of the evidence and the textbooks in the pile, sky-high, all said there was negligence, and all doctors said those textbooks are faulty. They all said you've got to take it out immediately. But Dr. Hoffman disagreed with you, so that was a question of fact. Well, he disagreed at the trial, but when he's done depositions for plaintiffs, for defendants in the past, he said, yeah, I can predict that. But the testimony before the jury that was against the manifest way of the evidence was a causation. Correct. That is correct. And then you were denied your damage testimony. I was. Also, I believe the biopsy showed that the final... after the biopsy, the biopsy showed that 1.1... 1.2 centimeters of invasion, that was the hard mass that was taken out in the biopsy. When the mastectomy was done, it showed that the total amount of the tumor with all the fingers spreading out over a year was 2.3 centimeters, so it had almost doubled. So it was in 2014, I think the best evidence is that it was only 1.1 centimeter, but it had grown to 2.3 by 2015. And unless there's any other questions, I think I'm through. I think I'm sufficiently overwhelmed by all the questions. Thank you very much. Thank you. Going through your point about Lincoln and the courthouse, while you're here, feel free to look. I think there's some things downstairs that some history-type things take the time, and feel free to look around. Risking even more sanctions, before you came in, I took a couple pictures. Well, obviously, we were taking matter under environment and issue in order to